STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Appellant,

v.

CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY n/k/a Burlington Northern, Inc., an Illinois Corporation, et al., Respondents.

No. 27436.

Missouri Court of Appeals, Kansas City District.

Aug. 2, 1976.

Bruce A. Ring, Chief Counsel, Jefferson City, Earl H. Schrader, Jr., Terry P. Thompson, Asst. Counsel, Missouri State Highway Commission, Kansas City, for appellant.

Charles S. Wilcox, St. Joseph, Wilcox & Houts, of counsel, St. Joseph, for respondent Union Terminal Railway Co.

R. A. Brown, St. Joseph, Brown, Douglas & Brown, St. Joseph, of counsel, for respondent Pioneer Materials Co., Inc.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

PRITCHARD, Chief Judge.

This is a condemnation suit for a right of way for the construction of Interstate Highway 229, which will circle the west side of St. Joseph, Missouri, thence extending through Buchanan and Andrew counties.

Appellant's claim is that the trial court erred in "holding in its order distributing the commissioners' award that the respondent Union Terminal Railway Company and the respondent Union Terminal Railway Company, Inc., owned a fee simple interest in part of Tract No. 707 and that the respondent Union Terminal Railway Company owned a fee simple interest in all of tracts 703, 719, 720, 721 and 722." The basis for appellant's claim that the percentage of apportionment allotted by the trial court, which carries through to the jury trial on the exceptions to the commissioners' award as filed by the various parties is that it could preclude appellant from bringing before the jury possible title defects and their effect on valuation of the market value of the property "if the determination of interests in the court's Order did actually decide the strength of the title of the respondents."

The matter of whether appellant is an "aggrieved" party with a right of appeal under § 512.020, RSMo 1969, must first be

noticed. It claims that it is aggrieved by reason, as condemnor, of being made an interested party under the apportionment statute, § 523.053(1), RSMo 1969. It would appear that this statute is merely for the protection of the condemnor where a condemnee, after exceptions are filed, draws down the commissioners' award pending the final award as determined by the jury. It is highly doubtful that appellant is aggrieved by the court's order of apportionment in the sense that it has suffered a pecuniary loss as the result of the order. "The condemnor is not concerned with the rights of rival claimants to the award because the fund deposited in court is substituted for the property taken in condemnation." *State ex rel. Highway Commission v. Paul, et al.*, 368 S.W.2d 419, 423 (Mo.banc 1963). Appellant has never claimed any interest or title to the property being condemned by it. "[O]rdinarily a judgment or decree which affects or determines rights in particular property does not aggrieve a party who has, or claims, no interest or title to the property, * * *." *Campbell Street Lumber Company v. Central Mortgage Co., et al.*, 436 S.W.2d 57, 60 (Mo.App.1968). Because of the importance of the question of the admissibility of evidence bearing upon the sole ownership of respondents as it may arise upon trial of the damage issues to a jury (i. e., the issues of whether any defects of title bear upon the evaluation of the fair market value of the property, this court [treating appellant as an aggrieved party only in the sense of its entitlement at a later trial to introduce evidence that respondents owned less than a fee simple, and treating the case in the nature of a declaratory judgment of the rights of the parties in that respect]) will examine the pleadings and evidence to ascertain if the trial court did in fact properly determine ownership to be in respondents as an incident to the apportionment order.

Appellant's order of publication of notice to the unknown heirs, grantees, successors and assigns of certain named defendants, other than respondents, is contained in 60 pages of the transcript. It is said that every conceivable person who might have had an interest in the property to be condemned was made a party. A rough count of the known and unknown persons, trustees, organizations and corporations named totals about 467. None of these persons appeared or asserted any interest in the property, by way of a reversion of a fee interest if all respondents had was an easement, or otherwise.

A guardian ad litem was appointed for all of the unknown heirs, and he filed answer to the petition in condemnation. Union Terminal filed separate answer, and by paragraph 7 thereof affirmatively stated "that it is the owner of said property." Pioneer Materials Company, Inc., filed no answer, but by motion it stated to the court that there were other defendants claiming an interest in the $407,457.00 commissioners' award for Tract No. 707, and asked that the court determine the percentages of the award to which each of the parties were entitled. The court set off $211,000.00 to Pioneer and $110,700.00 to Union of this award. As to Tract No. 703, Union moved that the entire $110.00 award be apportioned to it, alleging that no other defendants had any right, title or interest in the premises condemned. Union made the same motions as to Tract No. 719 ($4,084.00); Tract No. 720 ($3,034.00); Tract No. 721 ($27,084.00); and Tract No. 722 ($3,100.00).

■ Pioneer's evidence was that its $211,000.00 apportionment was largely for property owned by it separate and apart from any underlying real estate except for one parcel which it had acquired from Union by quit claim deed on June 8, 1973, for $7,200. The commissioners' award for this parcel was $7,700.00. Union presented as evidence deeds which it had received from the Chicago, Burlington and Quincy Railroad Company covering Tracts Nos. 703, 707, 719, 720 and part of 721, twenty-two tracts in all. There was no showing of how Burlington originally acquired its title. It is impossible to match the descriptions in the various deeds with the land described in appellant's petition, or on the plat of the area of highway construction introduced by

the guardian ad litem as an exhibit. Since appellant does not question the statements about the deeds contained in respondents' brief, it must be assumed that they affect the land taken in condemnation. There are 21 exchange deeds, each reciting a consideration ranging from $50.00 to $500.00 between Union and Burlington. There is a quit claim deed from Burlington to Union dated February 29, 1912. On September 6, 1910, the St. Louis and Kansas City Land Company deeded to Union a part of Tract No. 703 for $750.00. Another deed between the same parties for the same consideration was in evidence. Three deeds relating to exchanges of property between Pioneer and Union as to Tracts Nos. 719, 720 and 721, and three other deeds relating to the latter tract, reciting considerations of $660.00, $660.00 and $1.00 were in evidence. There was a deed in evidence on Tracts Nos. 721 and 722 reciting a consideration of $10,-000.00.

In addition to the above deeds Union had testimony that for at least 25 years it had claimed the real estate (except that conveyed to Pioneer, and that claimed by Pioneer Sand) openly, notoriously and adversely to all others. The deeds certainly give color to the claim of adverse possession, and Union's ownership has never been questioned. At various times since 1903 Union has leased tracts or parts thereof to others, which fact also evidences a claim of ownership.

The law is settled that a railroad company may have a fee simple title of land which it has purchased for a valuable consideration (not voluntary) with no limitation on the quantum of estate conveyed, all of which is reflected in the foregoing deeds. None of these deeds have any reference to rights of way as was the three time recital in the deed in *Schuermann Enterprises, Inc. v. St. Louis County,* 436 S.W.2d 666, 668[3] (Mo.1969). Cases holding that a fee simple title to real estate may be taken by a railroad for consideration are: *Coates & Hopkins Realty Co. v. Kansas City T. Ry. Co.,* 328 Mo. 1118, 43 S.W.2d 817, 822[9] (1931); and *Clay v. Missouri State Highway Com-*

*mission,* 362 Mo. 60, 239 S.W.2d 505, 508[5, 6] (1951). The *Clay* case distinguished *Brown v. Weare,* 348 Mo. 135, 152 S.W.2d 649 (Mo.1941), upon the basis that the latter was a voluntary conveyance, i. e., one without consideration. The evidence here is abundant that respondents paid a valuable consideration for the tracts in question, and furthermore, for more than 25 years they held the land by adverse possession against all persons, which fact further strengthens respondents' claims of absolute ownership. *Moran v. Roaring River Development Company,* 461 S.W.2d 822, 831[6] (Mo.1970), where it was said, "Adverse possession confers a full title in fee, as much so as a warranty deed from the owner. *Moore v. Hoffman,* 327 Mo. 852, 39 S.W.2d 339."

Not by separate point but in argument under its Point II, appellant presents the proposition that because of constitutional restrictions; the authorization of Union's charter; the fact that Union is excepted from the application of the General Corporation Law of Missouri, § 351.020, RSMo 1969; and the fact that Union is incorporated under Chapter 388, all that Union has by way of interest in the tracts in question is an easement. § 388.210(2) provides that a *voluntary* grant shall be held by the railroad for the purpose of such grant only. It says nothing about a conveyance to a railroad upon a valuable consideration, which fact here and the cases above referred to enables the railroad to hold real estate in fee simple.

Mo.Const. Art. 11, § 5, does provide that no corporation shall engage in business other than that authorized by its charter or by law, nor hold any real estate except as is necessary and proper for the carrying out of its legitimate business. Union's charter authorizes it "to form a Company for the purpose of constructing, maintaining and operating a standard gauge railroad for public use in the conveyance of persons and property * * *." If as appellant contends, Union's *leasing* of the lands involved in this condemnation are for non-railroad purposes and thus were ultra vires acts under the constitutional provi-

sions and Union's charter, appellant has no standing to raise the question. With some exceptions such as a stockholder who is not estopped by accepting pecuniary benefits, see 19 Am.Jur.2d Corporations, § 969, p. 447, only the attorney general of the state, or any circuit or prosecuting attorney of the county in which the action is commenced, may raise the question of ultra vires acts of a corporation. See § 531.010, RSMo 1969. *Land v. Coffman, et al.,* 50 Mo. 243 (1872); *Atlantic & Pacific R.R. Co. v. City of St. Louis,* 66 Mo. 228, 251 (1877); *Chambers v. City of St. Louis,* 29 Mo. 543, 576 (1860). In the *Land* case, defendant, in a situation similar to that of Union here, claimed title through the Pacific Railroad Company. Plaintiff challenged the railroad's power to hold the land in question. Inter alia, the court held that no one except the state in a direct proceedings could raise the question as to the amount of land which might be held. See also *Hovelman v. The Kansas City Horse R.R. Co.,* 79 Mo. 632, 639 (1883); *Shewalter v. Pirner, et al.,* 55 Mo. 218, 233 (1874); *Martindale v. Kas. C., St. Jo. & C. B. R. R. Co.,* 60 Mo. 508, 510 (1875); and *Coates & Hopkins Realty Co. v. Kansas City T. Ry. Co.,* 328 Mo. 1118, 43 S.W.2d 817, 822 (1931).

The trial court did not err in apportioning the commissioners' awards as it did. It follows that no evidence in disparagement of respondents' ownership or title will be admissible in the trial to a jury of the issue of the fair market values of the properties.

The judgment is affirmed.

All concur.