**Norman CHAMP, et al.,**
**Plaintiffs–Appellants,**

v.

**John H. POELKER, et al.,**
**Defendants–Respondents.**

**Nos. 52912, 52933.**

Missouri Court of Appeals,
Eastern District,
Division Five.

June 21, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1988.

Application to Transfer Denied
Sept. 13, 1988.

385

Lewis C. Green, St. Louis, for plaintiffs-appellants.

Donald Gunn, Jr., Edward J. Hanlon, City Counselor's Office, Gerard T. Carmody, and George S. Roudebush, Bryan, Cave, McPheeters & McRoberts, Harry B. Wilson, Jr., Husch, Eppenberger, Donohue, Elson & Cornfeld, Walter M. Clark, and Joseph R. Niemann, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Thomas W. Wehrle, County Counselor, Clayton, Stefan J. Glynias, Evans & Dixon, St. Louis, for defendants-respondents.

CARL R. GAERTNER, Judge.

Appellants, Norman Champ and Champ Spring Corporation, brought this taxpayers' action to recover $300,000 in contributions paid by the Industrial Development Authority of the City of St. Louis (IDA) and the Convention and Visitors Bureau of Greater St. Louis (Convention Bureau) to People for Jobs and Growth (PJG), a campaign committee organized under Chapter 355, RSMo 1986, to promote passage of a 5/8th cent sales tax proposition in St. Louis City and County. Following extensive discovery, the trial court dismissed all counts of plaintiffs' petition with prejudice and plaintiffs appeal. We affirm in part and reverse in part.

■ In passing upon the sufficiency of a petition to state a claim upon which relief may be granted to the plaintiff, we disregard mere conclusions by taking as true all well pleaded facts alleged. If the facts pleaded and the reasonable inferences to be drawn therefrom show any ground for relief, then the petition should not be dismissed without providing the pleader an opportunity to prove the truth of his allegations. *Johnson v. Great Heritage Life Insurance Co.*, 490 S.W.2d 686, 690 (Mo.App. 1973). Accordingly, we synopsize the facts as gleaned from plaintiffs allegations.

One of the issues in the August 3, 1982 St. Louis City and County election was the imposition of a 5/8th cent sales tax to fund a regional economic development district. Prior to the election, supporters of the tax proposition, known as Proposition 1, formed PJG to campaign for passage of the ballot measure. PJG hired the firm of Fleishman–Hillard, Inc. as public relations consultants and borrowed $250,000 from Centerre Bank, Inc. to meet immediate campaign needs.

Despite PJG's efforts, Proposition 1 was defeated. On August 19, 1982, St. Louis City Mayor Schoemehl requested the IDA to contribute $150,000 to PJG for "further commercial and industrial development in St. Louis." IDA directors approved the expenditure and issued a check for $150,000 to the Convention Bureau to be combined with Convention Bureau funds and donated to PJG. On September 20, 1982, at the instigation of Mayor Schoemehl and St. Louis County Executive McNary, the executive committee of the Convention Bureau approved a $300,000 contribution to PJG. PJG used the funds to repay its outstanding loan with Centerre Bank and

to pay Fleishman–Hillard, Inc. for consulting services.

On February 18, 1983, appellants filed an eight count petition against the IDA, the Convention Bureau, various IDA and Convention Bureau board members, Mayor Schoemehl, County Executive McNary, Centerre Bank and Fleishman–Hillard, Inc. Count I alleged that IDA board members violated the Missouri Constitution, article VI §§ 23 and 25, by illegally transferring public funds to the PJG for a private purpose, violated Missouri's Sunshine Law by failing to hold open meetings or give notice of meetings regarding the PJG donation, and violated the Campaign Finance Disclosure Law by failing to properly report the PJG contribution. In Count II, appellants allege that the Bureau was unjustly enriched by the funds transferred to it from the IDA and sought to impose a constructive trust on the Convention Bureau in the amount of $150,000. Counts III and IV allege that the individual Convention Bureau defendants purposefully violated the Sunshine Law and violated article VI, §§ 23 and 25 by illegally expending public funds. In Counts V and VI appellants sought to impose a constructive trust on PJG in the amount of $300,000 and enjoin PJG from further violating the Campaign Finance Disclosure Law. Count VIII alleged that Fleishman–Hillard violated the Campaign Finance Disclosure Law and sought to impose constructive trusts on Fleishman–Hillard and Centerre Bank.

All defendants moved to dismiss. The trial court overruled the motions and ordered extensive discovery which took place throughout 1983 and 1984. Appellants then filed their First Amended Petition on May 22, 1985. All defendants again moved to dismiss. On October 21, 1986, the trial court entered an order dismissing all counts of appellants' First Amended Petition with prejudice. Following an ex parte request by appellants, however, the trial court amended its original order and allowed appellants to file a Second Amended Petition. All defendants renewed their motions to dismiss. The trial court dismissed the Second Amended Petition on December 3, 1986. This appeal followed.

■ Respondent Fleishman–Hillard moves to dismiss the appeal. Respondent contends that the purported filing of the Second Amended Petition was a nullity because the trial court amended its original order without affording defendants notice or an opportunity to be heard. We agree.

Absent notice to the defendants, the trial court's order, which had the effect of vacating the original judgment, and allowing appellants to file their Second Amended Petition exceeded the court's jurisdiction under Rule 75.01, and was therefore void. *Griffith v. Mullenix Corp.*, 688 S.W.2d 46, 47 (Mo.App.1985); *Dixon v. Bi–State Development Agency*, 636 S.W.2d 696, 698 (Mo.App.1982). Appeal No. 52912 is dismissed. However, we find that appellants did not abandon their appeal from the dismissal of the First Amended Petition. On March 25, 1987, we granted appellants leave to file a late notice of appeal from the order dismissing the First Amended Petition. On July 29, 1987, we granted appellant's motion to amend their brief to include the dismissal of the First Amended Petition in their point of error. Appeal No. 52933 is properly before this court. We, therefore, look to the first amended petition to determine whether or not it contains allegations of fact which, if true, show plaintiffs may be entitled to the relief they seek.

### I.

■ Appellants first argue that the IDA, the Convention Bureau, and the individual defendants associated therewith illegally transferred public funds from the IDA and Convention Bureau to pay the private debts of PJG. The Missouri Constitution prohibits any city, county, political corporation or subdivision of the State from granting public money or lending credit to a private corporation or association. Article VI, §§ 23 and 25. Appellants request the court to declare the expenditures void and hold the defendant directors of both corporations personally liable for restoring the misappropriated funds. Appellants assert their status as taxpayers in both St. Louis

City and County as the basis for their claims.

The threshold question in this appeal is whether appellants have standing to challenge the actions of the IDA and the Convention Bureau. "Standing is an 'antecedent to the right to relief' and has been said to be, 'in a sense, jurisdictional in limine....'" *Sommer v. City of St. Louis*, 631 S.W.2d 676, 679 (Mo.App.1982) (quoting *State ex rel. Schneider v. Stewart*, 575 S.W.2d 904, 909 (Mo.App.1978). Regardless of the merits of appellants' claims, without standing, the court cannot entertain the action. *Worlledge v. City of Greenwood*, 627 S.W.2d 328, 331 (Mo.App. 1982).

"It is a well-recognized rule that an aggrieved taxpayer may institute a suit against a governmental unit to seek relief for an alleged illegal or improper act." *Collins v. Vernon*, 512 S.W.2d 470, 473 (Mo.App.1974); 74 Am.Jur.2d, *Taxpayers Actions* § 1 (1974). The rationale behind the rule is that a taxpayer has an equitable ownership in public funds and the illegal expenditure of such funds subjects the taxpayer to liability for replenishing the misappropriated money. *Id.* To establish taxpayer's standing, plaintiffs must allege facts from which the court can infer that plaintiffs will "inevitably" or "necessarily" suffer an increased tax burden from the alleged illegal expenditure. *Sommer*, 631 S.W.2d at 680; *Brock v. City of St. Louis*, 724 S.W.2d 721, 725 (Mo.App.1987); *Missourians for Sep. of C. and S. v. Robertson*, 592 S.W.2d 825, 839 (Mo.App.1979). Merely pleading that public funds were expended illegally is insufficient to establish standing. *Worlledge*, 627 S.W.2d at 331. We must look to appellants' petition to determine whether "the ultimate fact of damages" in the form of an increased tax burden "arises as a necessary conclusion from facts stated in the petition." *Sommers*, 631 S.W.2d at 679.

Appellants claim that the money contributed by the IDA came from service charges and interest income generated from IDA bonds. Appellants argue that these funds are public funds. We disagree.

The IDA is a corporation organized under Chapter 349, RSMo 1986, to promote commercial and industrial development. It has the power to issue bonds without voter approval, to loan the proceeds of the bonds for the purchase and construction of development projects, to lease or sell property and to collect rents and fees for IDA services. § 349.050, RSMo 1986. The IDA is a distinct legal entity, not a political subdivision of the state. *State ex rel. Jardon v. Ind. Dev. Auth., Etc.*, 570 S.W.2d 666, 673 (Mo. banc 1978). It receives its revenue solely from "the revenues and receipts derived from the lease or sale ... of its properties." *Id.* at 672 (quoting *Industrial Development Authority of the City of Chesapeake v. Suthers*, 208 Va. 51, 155 S.E.2d 326, 331–32 (1967)). The IDA cannot levy or collect taxes. All IDA bonds must be repaid solely from revenue generated by IDA projects. § 349.055, RSMo 1986. Furthermore, IDA debts are not the debts of St. Louis City. § 349.080, RSMo 1986.

Where no general revenue is involved in the issuance of bonds, "a taxpayer has no litigable interest in connection with such bonds." *Moseley v. City of Mountain Grove*, 524 S.W.2d 444, 448 (Mo.App.1975) (quoting 74 Am.Jur.2d Taxpayers' Actions § 21); *Spencer v. Village of DeKalb*, 408 S.W.2d 78, 79–80 (Mo.1966). A loss of revenue from IDA coffers cannot increase the burden of public debt or taxation, and therefore, appellants have not suffered "a direct, pecuniary injury in the form of an increased tax burden." *Brock*, 724 S.W.2d at 725. Appellants have failed to establish standing as taxpayers to challenge the legality of IDA's contribution to PJG.[1] *Smith v. Hendricks*, 136 S.W.2d 449, 455 (Mo.App.1939).

1. Appellants also argue that the IDA exceeded its corporate power under § 349.050, RSMo 1986, by donating money to PJG. Appellants request that the court realign the IDA as a plaintiff to seek indemnification from its directors for authorizing an ultra vires act. Such an action may be brought only by the Attorney General, or in some instances a shareholder or member of the corporation. See § 351.395, RSMo 1986; *State ex rel. State Hwy. Com'n v.*

Appellants further contend that the money contributed by the Convention Bureau constituted an illegal expenditure of public funds. Appellants argue that the money for the donation was derived from St. Louis County's hotel/motel tax, § 66.390, RSMo 1986, and therefore, they have standing to challenge the illegal expenditure of those funds.

The Convention Bureau is a not-for-profit corporation organized under Chapter 355, RSMo 1986 to promote tourism and convention business in St. Louis City and County. During 1982 St. Louis County and the Convention Bureau entered into a contract whereby St. Louis County agreed to pay the Convention Bureau $600,000 a year in quarterly installments of $150,000 to promote tourism in St. Louis County. Pursuant to § 66.390, St. Louis County used revenue derived from the hotel/motel tax to pay the Convention Bureau. Appellants do not question the lawfulness of the contract between St. Louis County and the Convention Bureau. Rather, they challenge the Convention Bureau's expenditure of funds derived from its contract with St. Louis County.

Appellants argue that the County's tax funds remained public funds in the hands of the Convention Bureau, and were subject to the spending restrictions of article VI, sections 23 and 25 of the Missouri Constitution. Public funds are "funds belonging to the state or any ... political subdivision of the state; more especially taxes ... appropriated by the government to the discharge of its obligations." *State ex rel. St. Louis Police Relief Ass'n v. Igoe*, 340 Mo. 1166, 107 S.W.2d 929, 933 (Mo.1937) (quoting 50 C.J. p. 854, § 40). Once lawfully spent, public funds lose their identity in the hands of a non-governmental entity. *See State ex rel. Wagner v. St. Louis County Port Authority*, 604 S.W.2d 592, 604 (Mo.banc 1980); *Krebs v. Board of Trustees of Teachers' Retire. Sys.*, 410 Ill. 435, 102 N.E.2d 321, 326 (Ill.1951). The mere fact that the City and County pay for Convention Bureau services with tax dol-

*Chicago, B & Q R. Co.*, 539 S.W.2d 760, 764 (Mo.App.1976). As taxpayers, appellants lack

lars does not make the Convention Bureau's funds "public". Unless the Convention Bureau qualifies as a "political subdivision of the state" subject, in and of itself, to the restrictions of article VI, §§ 23 and 25, the tax funds expended by St. Louis County lose their identity as public funds in the hands of the Convention Bureau.

A political subdivision includes "any ... public subdivision, public corporation or public quasi-corporation having the power to tax." Mo. Const. art. X, § 15. "[A]n authority without the power to tax does not fall within the definition of § 15 and therefore is not a political subdivision." *Wagner*, 604 S.W.2d at 604. In *Ruggeri v. City of St. Louis*, 429 S.W.2d 765, 769 (Mo. 1968), the Supreme Court held that a City ordinance authorizing the Convention and Tourism Board (the Convention Bureau's predecessor) to administer the City's hotel/motel tax was unconstitutional because it authorized a "private" non-governmental body to control public funds. The court noted, however, that the City could lawfully enter into an exclusive contract with a private entity such as the Convention Board to perform public services, *Id.*, the key difference being that the tax funds in the latter situation are controlled and expended by the City as opposed to a nongovernmental entity. *See Ruggeri v. City of St. Louis*, 441 S.W.2d 361, 365 (Mo. 1969).

Appellants cite *Castilo v. State Highway Commission*, 312 Mo. 244, 279 S.W. 673 (Mo. banc 1925), in support of their argument that taxpayers have standing to challenge Convention Bureau expenditures. In *Castilo* the court held that a taxpayer had standing to challenge an illegal expenditure of tax funds allocated to the Highway Commission. Id., 279 S.W. at 675. The *Castilo* decision is not controlling. The State Highway Commission, unlike the Convention Bureau, is clearly a *"state agency* invested with exclusive and plenary powers and duties ... to receive and administer ... highway funds and apportionments." (em-

standing to request such relief.

phasis added) *State Highway Commission of Missouri v. Volpe*, 347 F.Supp. 950, 952 (W.D.Mo.1972) modified, 479 F.2d 1099 (8th Cir. 1973). The Convention Bureau is not, as appellants suggest, a subdivision of the state. Although its uses and objectives are "public," it is a "private" corporation. *Ruggeri*, 429 S.W.2d at 768–69. Appellants lack standing as taxpayers to challenge the Convention Bureau's expenditures.

■ Appellants additionally argue that the Convention Bureau violated its articles of incorporation by donating money to PJG. Only members, directors, or the Attorney General have standing to challenge ultra vires acts of a not-for-profit corporation. § 355.095, RSMo 1986. Appellants are not among the individuals authorized by statute to challenge the Convention Bureau's alleged ultra vires action.

## II.

■ Appellants next claim that all defendants, except Centerre Bank, violated Missouri's Campaign Finance Disclosure Law, § 130.011 et seq., RSMo 1986. Respondents argue that Chapter 130, creates an exclusive enforcement scheme which precludes appellants from asserting a private civil cause of action under the statute. While conceding that Chapter 130 does not establish a private civil remedy, appellants maintain that the statute's enforcement provisions are so grossly inadequate that the court should imply a private civil action to insure the effectiveness of the statute. *See Jensen v. Feely*, 691 S.W.2d 926, 928 (Mo.App.1985).

"The creation of a private right of action by implication is not favored, and the trend is away from judicial inferences that a statute's violation is personally actionable." *Shqeir v. Equifax, Inc.*, 636 S.W.2d 944,

947 (Mo.banc 1982). To find an implied civil cause of action, the court must determine that "the legislature intended to create a civil duty although it did not explicitly state this intention." *Bailey v. Canadian Shield General Insurance Co.*, 380 S.W.2d 378, 381 (Mo.1964) (quoting Lowndes, *Civil Liability Created by Criminal Legislation*, 16 Minn.L.Rev. 361, 363 (1972)). Absent express language or a "clear implication" to the contrary, "a statute which creates a criminal offense and provides a penalty for its violation [should] not be construed as creating a new civil cause of action." *Christy v. Petrus*, 365 Mo. 1187, 295 S.W.2d 122, 126 (Mo.banc 1956). A private remedy will not be implied when it does not promote or accomplish the primary goals of the statute. *Shqeir* at 948.

Missouri's Campaign Finance Disclosure Law creates a campaign finance review board to administer the reporting requirements, investigate alleged violations of the law, and report suspected violators to the prosecuting attorney. Private citizen's may make written complaints to the board which the board must investigate and act upon within sixty days. § 130.066(4), RSMo 1986. A person found guilty of violating the law is guilty of a class A misdemeanor. § 130.081, RSMo 1986. Chapter 130 authorizes civil fines up to five thousand dollars and a candidate who fails to comply with the reporting requirements can be forbidden to assume office. §§ 130.071–72, RSMo 1986. Such a comprehensive enforcement scheme, evidences a legislative intent to fashion an exclusive mechanism for enforcement of Chapter 130.[2] Furthermore, due to the potentially harmful effect of false accusations during a campaign, the recognition of a private cause of action could undermine the purpose of the statute. Appellants have failed

---

2. We note that the Missouri Campaign Disclosure Law was patterned after the Federal Election Campaign Act of 1971, as amended in 1974, 2 U.S.C. §§ 431–55 (1976). *Ryan v. Kirkpatrick*, 669 S.W.2d 215 (Mo.banc 1984). Like Missouri's act, the federal act provides for private citizens to register complaints with the federal election commission and requires the commission to follow administrative procedures in investigating those complaints. The intent of the

Federal statutory scheme was to provide the exclusive method for determining the role of private citizens in the enforcement of the Federal Election laws. *In re Federal Election Campaign Act Litigation*, 474 F.Supp. 1051, 1053 (D.D.C.1979), The Federal Election Commission is the exclusive administrator and enforcer of the federal act. *Federal Election Commission v. N.R.A. of America*, 553 F.Supp. 1331, 1333 (D.D.C.1983).

to state a claim against respondents for violating the campaign finance disclosure law.

### III.

■ Finally, appellants argue that the IDA, the Convention Bureau and the defendant directors connected therewith violated Missouri's Sunshine Law by failing to hold open meetings concerning the PJG contribution and failing to give adequate notice or publish tentative agendas of IDA and Convention Bureau meetings. §§ 610.-010–25, RSMo 1986.³ Appellants request the court to declare the actions of the IDA and Convention Bureau void, enjoin both the IDA and the Convention Bureau from further violating Chapter 610, and fine the officers and directors of both corporations under section 610.027, RSMo 1986, for purposefully violating the Sunshine Law.

Appellants' standing to enforce the Sunshine Law is not at issue. "Any aggrieved person, taxpayer to, or citizen of, this state ... may seek judicial enforcement of the requirements of sections 610.010 to 610.-025." Section 610.027.1, RSMo 1986. Whether the Sunshine Law applies to either the IDA or the Convention Bureau, however, is contested. Appellants contend that both the IDA and Convention Bureau are "public governmental bodies" as defined by section 610.010(2), and are subject to the restrictions of the Sunshine Law.

The Sunshine Law requires "all public governmental bodies" to give notice of each meeting and to publish a tentative agenda of all meetings. § 610.020, RSMo 1986. In order to exclude the public, a governmental body must give notice to the public and state the "reason for holding the closed session by reference to the specific exemption allowed under the provisions of section 610.025." § 610.020.6, RSMo 1986. Under section 610.010(2), RSMo 1986, a public governmental body includes:

[1] any legislative or administrative governmental entity created by the constitution or statute of this state, by order

or ordinance of any political subdivision or district, or by executive order, including any body, agency, board, bureau, council, commission, committee, department, or division of the state, of an political subdivision of the state, of any county or of any municipal government, school district or special purpose district, [2] any other legislative or administrative governmental deliberative body under the direction of three or more elected or appointed members having rule making or quasi-judicial power, [3] any committee appointed by or under the direction or authority of any of the above named entities and which is authorized to report to any of the above named entities, and [4] any quasi-public governmental body.

*See MacLachlan v. McNary,* 684 S.W.2d 534, 536 (Mo.App.1984). Appellants argue that both the IDA and the Convention Bureau are subject to the Sunshine Law because the IDA is an "administrative governmental entity" created by statute and the Convention Bureau is a "quasi-public governmental body" as those terms are defined in section 610.010(2).

The Industrial Development Authority is a private corporation organized under Chapter 349. The IDA is subject to Missouri's general corporation law, Chapter 351, RSMo 1986. § 349.052, RSMo 1986. The IDA cannot tax, formulate governmental policy, or promulgate rules which directly affect the citizenry. Although its purpose may benefit the public, the IDA is a distinct legal entity, not a political subdivision of the city. *State ex rel. Jardon,* 570 S.W.2d at 671–75. While the IDA is authorized "[t]o adopt bylaws and rules for the regulation of its affairs and the conduct of its business," § 349.050(1), RSMo 1986, this internal regulatory power should not be confused with governing power as that term is used in the Sunshine Law.

By its very nature, the quintessence of a "public governmental body" is the power to govern by the formulation of policies and the promulgation of statutes,

---

3. Section 610.010, RSMo 1986 was significantly amended in 1982. The effective date of that amendment was August 13, 1982. All relevant

meetings concerning the PJG donation occurred after August 13, 1982, and therefore, § 610.010 in its amended form governs this appeal.

ordinances, rules and regulations, or the exercise of quasi-judicial power. It defies semantics to believe that the legislature intended inclusion of bodies or entities barren of the power to govern in the definition of "public governmental body". If such were intended, a simple stroke of the pen striking the adjective "governmental" would have made it a fait accompli.

*Tribune Publishing Co. v. Curators of Univ. of Mo.*, 661 S.W.2d 575, 584 (Mo.App. 1983). Although the court in Tribune Publishing was construing section 610.010 as it existed prior to the 1982 amendment, the statute has always required that the entity be a *public governing body*. The IDA is a private entity. It does not formulate policy or adopt rules which directly affect the citizens of the City of St. Louis. It is not a state agency. Because it is a private nongovernmental body, the IDA fails to satisfy the definitional requirements of section 610.010 and is not subject to the requirements of the Sunshine Law.[4]

▮ Appellants argue, more convincingly, that the Convention Bureau satisfies the definition of "quasi-public governmental body" and is, therefore, subject to the open meeting laws. "It is axiomatic that one who seeks relief under the provisions of a statute must plead and prove that he falls within the purview of the statute." *Warner v. Warner*, 658 S.W.2d 81, 82 (Mo.App. 1983). We are required when reviewing the dismissal of a petition to liberally construe all well pled facts and draw all reasonable inferences from those facts. *Williamson's Estate v. Williamson*, 380 S.W.2d 333, 338 (Mo.1964). We may not consider facts which are not set forth in the pleadings. *Empiregas, Inc., of Noel v. Hoover Ball & Bearing Co.*, 507 S.W.2d 657, 660 (Mo.1974).

Section 610.010(2), RSMo 1986, defines the term "quasi-public governmental body" as:

> any corporation organized or authorized to do business in this state under the provisions of Chapter 352, 353, or 355, RSMo, which [1] performs a *public function, and* [2] which has as its *primary purpose* to enter into *contracts* with public governmental bodies, or engage primarily in activities carried out pursuant to an agreement or agreements with public governmental bodies.
> (emphasis added)

In Count I, paragraph eight, appellants allege that the Convention Bureau is a chapter 355 corporation. In Count III, paragraph four, appellants claim that on September 20, 1982, the Convention Bureau held a closed meeting without public notice in violation of section 610.010, RSMo 1986. Appellants incorporate these allegations into Count IV, and add the allegation that the Convention Bureau entered into a contract with St. Louis County in 1982 for the promotion of tourism and convention business in the County. Count IV is the first mention of any contract between the Convention Bureau and a governmental entity.[5] While we cannot draw any inferences as to the Convention Bureau's business purpose prior to Count IV, we disagree with Respondent's argument that Count IV fails to state a claim under the Sunshine Law. From the facts alleged in Count IV, we can reasonably infer that the Convention Bureau's business is to perform a public function pursuant to its agreements with governmental bodies. *See Hohenstreet v. Sterling Nat. Land Co.*, 706 S.W.2d 80, 85 (Mo.App.1986). The Convention Bureau, therefore, constitutes a "quasi-public governmental entity" subject to the requirements of Chapter 610, RSMo 1986.

---

**4.** We are aware of Attorney General Opinion No. 17–83, Strong, 2–14–83 which concludes that the IDA is a public governmental body subject to the Sunshine Law. Opinions of the Attorney General are not binding on the court, and we do not find the opinion persuasive. *Mesker Brothers Industries, Inc. v. Leachman*, 529 S.W.2d 153, 158 (Mo.1975). The power of an industrial development authority under section 349.050(1) to adopt rules for the conduct of

its business, as noted in the Attorney General's opinion, does not confer the power to govern, i.e. the power to regulate the conduct of others.

**5.** Although the briefs refer to the Convention Bureau's articles of incorporation, that document is not a part of the record and is not before this court on appeal.

Having determined that appellants have standing to assert violations of the Sunshine Law and that the Convention Bureau is subject to its requirements, we return to the question of whether or not appellants are entitled to the relief they seek. In Count IV appellants ask the court to: (1) declare the September 20, 1982, Convention Bureau meeting unlawful and the PJG donation void, (2) hold the individual Convention Bureau defendants jointly and severally liable for the misappropriated money, (3) assess civil fines in the amount of $100 against each Convention Bureau defendant, and (4) enjoin the individual Convention Bureau defendants from further violating Chapter 610, RSMo 1986. Section 610.027.3, RSMo 1986, authorizes civil fines in the amount of not more than one hundred dollars plus court costs and attorney's fees against any member of a public governmental body who *purposefully* violates the law. The statute is silent as to personal liability on the part of individual members for expenditures authorized during an unlawful meeting. The court has no jurisdiction to impose remedies for violations of the Sunshine Law which the legislature has either deliberately or inadvertently omitted. *Hawkins v. City of Fayette*, 604 S.W.2d 716, 725 (Mo.App. 1980). The individual Convention Bureau defendants are not personally liable to replenish any of the money allegedly spent in violation of Chapter 610.

While section 610.030 authorizes injunctive relief to enforce the provisions of sections 610.100 through 610.115, respondents advise us that the "Convention and Tourism Bureau of Greater St. Louis" is no longer a functioning entity. If the Convention Bureau no longer exists, an injunction will not lie to prevent future violations of the statute.[6] *See Hribernik v. Reorganized School District R-3*, 276 S.W.2d 596, 597–98 (Mo.App.1955).

Finally, appellants seek to declare the actions of the Convention Bureau void, and in Counts V and VIII appellants request the court to impose constructive trusts on PJG, Centerre Bank and Fleishman–Hillard as holders of the illegally spent funds. Section 610.027.4, RSMo 1986, states that:

Upon a finding by a preponderance of the evidence that a public governmental body has violated any provision of sections 610.010 to 610.025, a court shall void any action taken in violation of [the statute], if the court finds under the facts of the particular case that the public interest in the enforcement of the policy of [the statute] outweighs the public interest in sustaining the validity of the action taken in the closed meeting, record, or vote.

Although the court has the power to declare the actions of the Convention Bureau void, appellants are not entitled to a constructive trust.

Constructive trusts are technically not trusts at all, but rather, are equitable devices employed by courts of equity to remedy a situation where a party has been wrongfully deprived of some right, title, benefit, or interest in property as a result of fraud or violation of confidence or faith reposed in another.

*Schultz v. Schultz*, 637 S.W.2d 1, 4 (Mo. banc 1982). Assuming as true the allegations that the Convention Bureau defendants failed to comport with the requirements of the Sunshine Law, such failure did not deprive appellants of any right, title, benefit or interest in property. Nor does such a failure constitute fraud or a breach of fiduciary duty to appellants.

Moreover, appellants repeatedly aver they are not seeking to recover the funds paid to PJG and subsequently to Centerre Bank and Fleishman–Hillard for themselves, for they obviously have no right, title, benefit or interest in such funds. Rather they pray the court to order restitution to IDA and to the Convention Bureau of the funds PJG used to pay Fleishman–

---

**6.** Our discussion concerning the applicability of Chapter 610 to the "Convention and Visitors Bureaus of Greater St. Louis" in no way affects the "Regional Convention and Tourism Commission" which is a separate entity from the Convention Bureau and is not a party to this law suit.

Hillard for services rendered and to satisfy its indebtedness to Centerre Bank. Although section 610.027 gives appellants, as citizens, standing to seek enforcement of the requirements of the Sunshine Law, in so far as restitution of these non-public funds is concerned, appellants are not "real parties in interest". This phrase refers not to an interest common to the public at large, but rather to a direct interest in the subject matter in the action by one entitled to reap the benefits of successful prosecution thereof. *Janssen v. Guaranty Land Title Co.,* 571 S.W.2d 702, 706 (Mo.App. 1978). Appellants have no such direct interest in or entitlement to the funds they seek to recover for others. The interest conferred upon a citizen pursuant to section 610.027 is limited to seeking judicial enforcement of the Sunshine Law. None of the Sunshine Law's provisions allow for an order of restitution of non-public funds paid in satisfaction of services which were rendered prior to the alleged violation of the Sunshine Law provisions. Appellants' attempt to couch their purported causes of action in the language of a derivative action by a corporate share holder or a member of an unincorporated association, *see* Rule 52.09, is patently inappropriate.

For the reasons set forth above, Appeal No. 52912 is dismissed. On Appeal No. 52933, we affirm the dismissal of all counts with the exception of Count IV. The cause is remanded as to Count IV of the First Amended Petition to the trial court for further proceedings not inconsistent with this opinion.

SATZ, C.J., and SMITH, J., concur.