Jerry STEWART, Appellant,

v.

WILLIAMS COMMUNICATIONS, INC., Respondent.

No. WD 60332.

Missouri Court of Appeals, Western District.

June 28, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 22, 2002.

Application for Transfer Denied Oct. 22, 2002.

Bruce B. Brown, Kearney, for appellant.

William C. Odle, Todd E. Hilton, Co-Counsel, Kansas City, for respondent.

Before ULRICH, P.J.,
BRECKENRIDGE and HARDWICK, JJ.

PATRICIA BRECKENRIDGE, Judge.

Jerry Stewart appeals from a judgment dismissing his petition to enforce the Missouri Sunshine Law, Chapter 610, RSMo 2000,[1] in which he requested that Williams Communications, Inc. (Williams) provide him with records and documents involving the acquisition of certain right-of-way easements in Johnson County. The trial court dismissed Mr. Stewart's petition because it found that only public governmental bodies are subject to the Sunshine Law, and Williams was not a public governmental body as defined in § 610.010(4). On appeal, Mr. Stewart claims that the trial court erred in granting Williams' motion to dismiss in that Williams is a public governmental body because it has the statutorily-created governmental power to make determinations which directly affect the public, namely, the power of eminent domain, and Williams is created and controlled by numerous state statutes and regulations. Because Williams is a private, for-profit corporation that lacks the power to formulate public policy, make rules or tax and it is not one of the specific entities included in the definition, it is not a public governmental body as defined in § 610.010(4) of the Sunshine Law. Therefore, the trial court did not err in granting Williams' motion to dismiss. The judgment of the trial court is affirmed.

## Factual and Procedural Background

"When reviewing the grant of a motion to dismiss a petition, all facts alleged in the petition are deemed true and the plaintiff is given the benefit of every reasonable intendment." *Magee v. Blue Ridge Prof'l Bldg. Co., Inc.*, 821 S.W.2d 839, 842 (Mo. banc 1991). Thus, this court will treat all of the facts pleaded in Mr. Stewart's petition as true. Williams is a private, for-profit interstate and intrastate telecommunications carrier that is incorporated in Delaware. Williams' principle place of business is in Tulsa, Oklahoma. Williams has an office in Jackson County, and it is authorized to conduct business in Missouri. Williams provides telecommunications services as a public utility, telecommunications utility, specialized communications common carrier, and reseller of communications. Williams has authority under § 523.010 to condemn land and interests for public use, and it has obtained easements for its telecommunications systems by agreement and by condemnation.

On March 29, 2000, Mr. Stewart sent a request to Williams for the disclosure of records that Mr. Stewart claims are public. Williams denied the request because it believed that it was not subject to the Sunshine Law. Mr. Stewart continued attempting to obtain records from Williams and, after several more unsuccessful attempts, filed a petition in the circuit court seeking enforcement of the Sunshine Law. Specifically, Mr. Stewart requested an order for the production of records, injunctive relief, assessment of civil fines, and an award of attorney fees and costs. The records requested were:

[P]ublic records and documents for the dates of July 1, 1999 through [March 29, 2000], involving the acquisition of right of way easements through Johnson County, Missouri for the purpose of constructing, installing, operating, maintaining, replacing, assigning, repairing and

---

1. All statutory references are to Revised Statutes of Missouri 2000, unless otherwise noted.

removing telecommunications systems, consisting of underground conduits and cables and appurtenances, as Williams Communications may from time to time require for transmission of communications for or by others:

1. Names and addresses of all landowners from whom Williams Communications, Inc. has obtained or attempted to obtain said easements.

2. The length of each easement which Williams Communications, Inc. has obtained or attempted to obtain.

3. The amounts offered and paid for each easement which Williams Communications, Inc. has obtained.

4. Names and addresses of all landowners from whom William (sic) Communications, Inc., obtained "Confidentiality Agreements" regarding the compensation paid by Williams Communications for said easement, and a copy of each agreement.

5. The amounts offered for each easement which Williams Communications was unable to obtain before January 28, 2000.

Williams filed a motion to dismiss Mr. Stewart's petition. Williams' motion asserted that the Sunshine Law only applies to public governmental bodies, and Williams is not a public governmental body as defined in § 610.010(4) of the Sunshine Law. Mr. Stewart opposed Williams' motion, claiming that Williams was subject to the Sunshine Law because it directly affects the public through the power of eminent domain, and it is created and controlled by numerous statutes and regulations. The trial court granted Williams' motion to dismiss. This appeal follows.

## Standard of Review

A motion to dismiss for failure to state a claim is an attack on the plaintiff's plead-

ings. *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 463 (Mo. banc 2001). When reviewing the grant of a motion to dismiss for failure to state a claim, this court considers that:

> A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

*Id.* at 464 (internal citations omitted, quoting *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993)).

In determining whether Mr. Stewart's petition alleges facts which establish the elements of a recognized cause of action, it will be necessary to interpret the provisions of § 610.010 of the Sunshine Law. "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Wheeler v. Bd. of Police Comm'rs of Kansas City*, 918 S.W.2d 800, 803 (Mo.App.1996) (quoting *Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988)). "The entire statute should be construed to determine legislative intent, and all provisions should be harmonized, if reasonably possible." *Campbell v. Labor & Indus. Rel. Comm'n*, 907 S.W.2d 246, 249 (Mo.App.1995).

## Williams Not a Public Governmental Body

In his point on appeal, Mr. Stewart claims that the trial court erred in grant-

ing Williams' motion to dismiss, in that Williams is a public governmental body because it has a statutorily-created governmental power to make determinations which directly affect the public, namely, the power of eminent domain. Mr. Stewart further argues that Williams is a public utility created and controlled by numerous regulations and statutes, which he claims makes Williams a public governmental body.

The basis for Mr. Stewart's claim is the Missouri Sunshine Law, Chapter 610, which was enacted to provide the public with access to government records and meetings. The legislature provided in § 610.011.1 that "[i]t is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law." The provisions of the Sunshine Law are to be liberally construed to promote this public policy. Section 610.011.1; *News–Press & Gazette Co. v. Cathcart*, 974 S.W.2d 576, 578 (Mo.App.1998). Public records are presumed to be open, unless they are specifically exempted. Section 610.022.5.

The provisions of the Sunshine Law that require public records to be open apply only to the records of public governmental bodies. Section 610.010(6); § 610.022.5. Therefore, the records of Williams are open to the public only if Williams is a public governmental body as defined in § 610.010(4) of the Sunshine Law. Section 610.010(4) defines a public governmental body as "any legislative, administrative or governmental entity created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, judicial entities when operating in an administrative capacity, or by executive order." In subparagraphs (a) through (f) of § 610.010(4), the statute specifically lists entities that are included in the definition of public governmental body. Mr. Stewart does not contend that Williams is included in the definition of the specific entities listed in subparagraphs (a) through (f). He conceded that fact in a letter to Williams' counsel dated May 16, 2000, in which he also admitted that Williams is not a quasi-governmental body as defined in § 610.010(4)(f). Instead, Mr. Stewart argues that the list is not exclusive, and that Williams falls within the general definition in § 610.010(4) of a public governmental body.

In interpreting a statute, this court will consider the words using their plain and ordinary meaning. *Wheeler*, 918 S.W.2d at 803. Here, public governmental body is defined in § 610.010(4), and that definition has been interpreted by the courts. Therefore, the statutory definition and judicial interpretation are the correct places from which this court will derive the definition of public governmental body.

The term "public governmental body" was interpreted by the Eastern District of this court in *Champ v. Poelker*, 755 S.W.2d 383 (Mo.App.1988).[2] In *Champ*, the plaintiffs asserted that the Industrial Develop-

---

**2.** This court recognizes that the Sunshine Law has been amended since the *Champ* decision. At the time of the *Champ* decision, however, the Sunshine Law also required the entity to be a public governmental body. *See* § 610.010(2), RSMo 1986. Section 610.010(2), RSMo 1986, defined public governmental body as, "any legislative or administrative governmental entity created by the constitution or statues of this state, by order or ordinance of any political subdivision or

district, or by executive order...." The current definition expands public governmental bodies to include "any legislative, administrative or governmental entity...." Because the *Champ* court based its holding on the definition of the term "governmental entity," rather than the limiting terms "legislative" and "administrative," the definition of "governmental" in *Champ* is instructive for this case. 755 S.W.2d at 390–91.

ment Authority of the City of St. Louis (IDA) was subject to the Sunshine Law because it was organized and created under Missouri statutes. *Id.* at 390. In holding the IDA was not subject to the Sunshine Law, the court reasoned that the IDA was a private corporation that "cannot tax, formulate governmental policy, or promulgate rules which directly affect the citizenry. Although its purpose may benefit the public, the IDA is a distinct legal entity, not a political subdivision of the city." *Id.* The court went on to state:

> By its very nature, the quintessence of a "public governmental body" is the power to govern by the formulation of policies and the promulgation of statutes, ordinances, rules and regulations, or the exercise of quasi-judicial power. It defies semantics to believe that the legislature intended inclusion of bodies or entities barren of the power to govern in the definition of "public governmental body". If such were intended, a simple stroke of the pen striking the adjective "governmental" would have made it a fait accompli.

*Id.* at 390–91 (quoting *Tribune Publ'g Co. v. Curators of Univ. of Mo.,* 661 S.W.2d 575, 584 (Mo.App.1983)).

■ Applying this definition to the facts of this case, Williams lacks governmental power. Williams is a private, for-profit corporation. It is not a subdivision of the government or a state agency. Williams does not have the power to formulate policies; promulgate statutes, ordinances, or regulations; or tax. Nor does Williams exercise quasi-judicial power. Furthermore, Williams does not promulgate rules that directly affect the citizens of Missouri.

Mr. Stewart attempts to include Williams in the definition of a public governmental body by focusing on the terms "any" and "governmental" in the definition: "any ... governmental entity creat-ed by the ... statutes of this state [or] by order or ordinance of any political subdivision or district." He contends that "any" is an all-inclusive word, and that "governmental" means "pertaining to or proceeding from government." He further alleges that had the legislature intended to limit the definition of governmental bodies, it would have used the word "government" and not "governmental." Applying these dictionary definitions, Mr. Stewart contends that the power of eminent domain proceeds from the government because the power is created by statute. Therefore, Mr. Stewart concludes that Williams is a governmental entity because it possesses a governmental power, namely, eminent domain.

In support of this contention, Mr. Stewart cites one sentence from *SNL Securities, L.C. v. National Association of Insurance Commissioners,* 23 S.W.3d 734, 738 (Mo.App.2000), that held that an entity was not a public governmental body because it could not "tax, promulgate statutes or regulations or directly affect the citizens of Missouri." While the sentence does include the language upon which Mr. Stewart relies, the opinion does not support Mr. Stewart's contention when the sentence is read in context. In discussing the definition of public governmental body found in *Champ,* the *SNL Securities* court stated that, in *Champ,* "The IDA had no authority to tax, formulate policy, or promulgate rules which would directly affect citizens of St. Louis." *Id.* (citing *Champ,* 755 S.W.2d at 390). In its subsequent application of the law of *Champ* to the facts of its case, the *SNL Securities* court used the phrase "tax, promulgate statutes or regulations or directly affect the citizens of Missouri." *SNL Securities,* 23 S.W.3d at 738. Mr. Stewart focuses upon the phrase "or directly affect the citizens of Missouri" and, in essence, contends that

the *SNL Securities* case extended the definition of public governmental body to any entity that may directly affect the citizens of Missouri. In reality, a more careful reading the *SNL Securities* case indicates that the court intended to follow the law of *Champ* to hold that only an entity that has the power to promulgate rules which directly affect the citizens of Missouri is a public governmental body. *Id.*

■ Nevertheless, Mr. Stewart contends that any entity that is created and controlled by regulatory state statutes with the power of eminent domain is subject to the Sunshine Law because it directly affects the citizens of Missouri. First, § 610.010(4) requires that, for an entity to be a public governmental body, it must be "created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, judicial entities when operating in an administrative capacity, or by executive order . . . ." Without citing authority that holds that a private foreign corporation acting as a public utility is created by state statute, Mr. Stewart claims that Williams is a public utility, created and controlled under numerous regulatory state statutes, and it is subjected to the jurisdiction, control, and regulation of the Missouri Public Service Commission. In addition, Mr. Stewart contends that Williams is created and controlled by statute because it has the statutorily created power of eminent domain. Section 610.010(4) requires that the entity be created by statute, constitution or order, not that the entity has a power created by statute. Therefore, Williams is not created by state statute. Because the language § 610.010(4) does not include entities that are merely controlled by statutes or regulations, Mr. Stewart's attempt to expand the definition of public governmental body to include entities that are controlled by statutes and regulations is not persuasive.

■ Furthermore, simply because an entity has the power of eminent domain or another power that may directly affect the citizens of Missouri, it does not necessarily follow that the entity is a public governmental body as defined in § 610.010(4) of the Sunshine Law. In fact, the legislature included in the definition of public governmental body particular entities that have the power of eminent domain. Section 610.010(4) states that a "public governmental body" includes:

\* \* \*

(f) Any quasi-public governmental body. The term "quasi-public governmental body" means any person, corporation or partnership organized or authorized to do business in this state pursuant to the provisions or chapter 352, 353, or 355, RSMo, *or unincorporated association which either:*

\* \* \*

b. *Performs a public function, as evidenced by a statutorily based capacity to confer or otherwise advance, through approval, recommendation or other means,* the allocation or issuance of tax credits, tax abatement, public debt, tax-exempt debt, *rights of eminent domain,* or the contracting of leaseback agreements on structures whose annualized payments commit public tax revenues; or any association that directly accepts the appropriation of money from a public governmental body, but only to the extent that a meeting, record, or vote relates to such appropriation.

(Emphasis added.) The legislature expressly determined which entities with the power of eminent domain it intended should fall within the definition of public governmental bodies when it included in the definition only persons, corporations or partnerships organized or authorized to do

business in this state under chapters 352, 353, or 355, RSMo, or unincorporated associations.[3] It did not include private, for-profit corporations, such as Williams.

If, as Mr. Stewart contends, any entity with the power of eminent domain is a public governmental body under the general definition of that term in § 610.010(4), then including specific entities with the power of eminent domain in subparagraph (f) of subsection (4) would have been surplusage. Under the rules of statutory construction, this court "should not interpret statutes in a way which will render some of their phrases to be mere surplusage. [This court] must presume that every word of a statute was included for a purpose and has meaning." *Comm. on Legislative Research of Mo. Gen. Assembly v. Mitchell,* 886 S.W.2d 662, 664 (Mo.App.1994) (citing *Hadlock v. Dir. of Revenue,* 860 S.W.2d 335, 337 (Mo. banc 1993)). The language the legislature used in the statute reveals that the legislature did not intend that just because an entity has the power of eminent domain, the entity is a public governmental body as defined in § 610.010(4) of the Sunshine Law. Therefore, the definition of public governmental body as defined in § 610.010(4) does not include Williams, and Williams is not subject to the requirements of the Sunshine Law.

Williams is a private, for-profit corporation. It is not a subdivision of the government or a state agency. In addition, it does not have the power to formulate public policy, make rules or tax. The only power it has that directly affects the citizens of Missouri is the power of eminent domain. Merely possessing the power of eminent domain, as discussed above, does not make an entity a public governmental body as defined in the Sunshine Law.

Therefore, Williams is not a public governmental body as defined in § 610.010(4) of the Sunshine Law and the trial court did not err in dismissing Mr. Stewart's petition. This point is denied.

The judgment of the trial court is affirmed.

All concur.

---

**3.** Chapter 352 pertains to religious and charitable associations and charitable gift annuities; Chapter 353 is "The Urban Redevelopment Corporations Law"; Chapter 355 is the "Missouri Nonprofit Corporation Act."