227 S.W.3d 498 (2007)
Dwight SCROGGINS, Jr., Prosecuting Attorney for Buchanan County, Missouri, Respondent,
v.
MISSOURI DEPARTMENT OF SOCIAL SERVICES, Children's Division, Appellant,
Chad Campbell, Chief Juvenile Officer, Buchanan County Juvenile Office, Defendant.
No. WD 66677.
Missouri Court of Appeals, Western District.
June 12, 2007.
*499 Robert R. Harding, Asst. Atty. Gen., Jefferson City, for Appellant.
Ronald R. Holliday, St. Joseph, for Respondent.
Linda M. Meyer, St. Joseph, for Defendant.
Before JAMES M. SMART, JR., Presiding Judge, JOSEPH M. ELLIS, Judge and EDWIN H. SMITH, Judge.
JOSEPH M. ELLIS, Judge.
In December 2005, the Missouri Department of Social ServicesChildren's Division received a request under the Sunshine Law asking for information related to the death of one-year-old Caden Blanton. The Children's Division had opened a protective services file concerning Caden prior to his death. Subsequently, DSS notified Respondent Dwight K. Scroggins, the Prosecuting *500 Attorney for Buchanan County ("the Prosecuting Attorney"), that the Director of DSS was considering ordering the release of the Children's Division's records related to Caden pursuant to his authority under § 210.150.5.[1] At that time, the Prosecuting Attorney had filed charges against Christopher Kerns and the child's mother, Heather Rich, stemming from the death.[2] Copies of the documents the Director was considering releasing were provided to the Prosecuting Attorney.
On December 19, 2005, the Prosecuting Attorney filed a petition for Declaratory Judgment and Injunctive Relief seeking to prevent the Director from opening the records at issue. The Prosecuting Attorney asserted that DSS was a "law enforcement agency" under the Sunshine Law and that the records were investigative reports exempt from disclosure under § 610.100. Following a hearing, the trial court entered its judgment declaring DSS to be a "law enforcement agency" and enjoining DSS from releasing any investigative records or reports related to the case until all criminal prosecutions were no longer active. DSS appeals from that judgment.
"When reviewing a declaratory judgment, an appellate court's standard of review is the same as in any other court-tried case." Guyer v. City of Kirkwood, 38 S.W.3d 412, 413 (Mo. banc 2001). "The trial court's judgment will be reversed only if no substantial evidence supports the judgment, if the decision is against the weight of the evidence, or if the judgment erroneously declares or misapplies the law." Foster v. Village of Brownington, 140 S.W.3d 603, 607 (Mo.App. W.D.2004).
"The interpretation of statutory language is a question of law, and our review of it is de novo." Maxwell v. Daviess County, 190 S.W.3d 606, 610 (Mo.App. W.D.2006). In interpreting statutory provisions, we are guided by the legislative intent and the text of the statute. State ex rel. Goodman v. St. Louis Bd. of Police Comm'rs, 181 S.W.3d 156, 159 (Mo.App. E.D.2005).
"The legislature provided in § 610.011.1 that `[i]t is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law.'" Stewart v. Williams Communications, Inc., 85 S.W.3d 29, 32 (Mo.App. W.D.2002). Accordingly, "[t]he provisions of the Sunshine Law are to be liberally construed to promote this public policy." Id.
"Section 610.011.2 provides in pertinent part that `[e]xcept as otherwise provided by law . . . all public records of public governmental bodies shall be open to the public for inspection and copying. . . .'" State ex rel. Goodman, 181 S.W.3d at 159. "In other words, public records are open to the public unless a statute protects their disclosure." Id. Statutory exceptions allowing records to be closed are to be strictly construed. Guyer, 38 S.W.3d at 414 (citing § 610.011.1).
The trial court determined that the exception set forth for investigative reports of law enforcement agencies contained in Section 610.100.2 shielded the documents at issue from disclosure. That statutory provision states, in relevant part:

*501 Each law enforcement agency of this state, of any county, or of any municipality, shall maintain records of all incidents reported to the agency, investigations and arrests made by such law enforcement agency. All incident reports and arrest reports shall be open records. Notwithstanding any other provisions of law other than the provisions of subsection 4, 5 and 6 of this section or section 320.083, RSMo, investigative reports of all law enforcement agencies are closed records until the investigation becomes inactive. . . .
§ 610.100.2. The trial court determined that DSS was a "law enforcement agency" and that § 610.100.2, therefore, served to bar disclosure of its investigative reports. In its sole point on appeal, DSS claims the trial court erred in concluding that DSS is a "law enforcement agency" as provided in this section.
The Sunshine Law does not define the term "law enforcement agency," and no Missouri case law has addressed whether DSS is such an agency. "In interpreting statutes, this Court determines the intent of the legislature, giving the language used its plain and ordinary meaning." Lane v. Lensmeyer, 158 S.W.3d 218, 226 (Mo. banc 2005). "In determining legislative intent, the statute is read as a whole and in pari materia with related sections." Id. "In interpreting statutes, it is appropriate to take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed, even though the statutes are found in different chapters and were enacted at different times." Id. (internal quotations omitted).
While "law enforcement agency" does not appear to have been defined in any Missouri statute, a "law enforcement officer" has been "defined as `any public servant having both the power and duty to make arrests for violations of the laws of this state[.]'" State v. Brown, 989 S.W.2d 652, 653 (Mo.App. E.D.1999) (quoting § 556.061(17) ). Generally, DSS has neither the power nor the duty to make arrests. See § 207.020 (setting forth the powers of the Family Support Division and the Children's Division); § 210.109 (listing duties of the Children's Division related to the child protection system).
Furthermore, DSS is directed to investigate reports of child abuse or neglect by Section 210.145. That section contains the following provisions:
2. The division shall utilize structured decision-making protocols for classification purposes of all child abuse and neglect reports.
3. Upon receipt of a report, the division shall determine if the report merits investigation. . . . The division shall immediately communicate all reports that merit investigation to its appropriate local office and any relevant information as may be contained in the information system. The local division staff shall determine, through the use of protocols developed by the division, whether an investigation or the family assessment and services approach should be used to respond to the allegation. . . .
4. The local office shall contact the appropriate law enforcement agency immediately upon receipt of a report which division personnel determine merits an investigation and provide such agency with a detailed description of the report received. In such cases the local division office shall request the assistance of the local law enforcement agency in all aspects of the investigation of the complaint. The appropriate law enforcement agency shall either assist the division in the investigation or provide the division, within twenty-four hours, an explanation in writing detailing *502 the reasons why it is unable to assist.

5. . . . If the report indicates the child is in danger of serious physical harm or threat to life, an investigation shall include direct observation of the subject child within twenty-four hours of the receipt of the report. Local law enforcement shall take all necessary steps to facilitate such direct observation.

. . . .
7. The investigation shall include but not be limited to the nature, extent, and cause of the abuse or neglect; the identity and age of the person responsible for the abuse or neglect; the names and conditions of other children in the home, if any; the home environment and the relationship of the subject child to the parents or other persons responsible for the child's care; any indication of incidents of physical violence against any other household or family member; and other pertinent data.
. . . .
10. Multidisciplinary teams shall be used whenever conducting the investigation as determined by the division in conjunction with local law enforcement.

. . . .
12. If the appropriate local division personnel determine after an investigation has begun that completing an investigation is not appropriate, the division shall conduct a family assessment and services approach. The division shall provide written notification to local law enforcement prior to terminating any investigative process. The reason for the termination of the investigative process shall be documented in the record of the division and the written notification submitted to local law enforcement.

Such notification shall not preclude nor prevent any investigation by law enforcement. . . .
§ 210.145 (emphasis added). This statutory language clearly indicates that the legislature did not consider DSS to be a "law enforcement agency" and requires the Children's Division to work with an appropriate law enforcement agency in conducting its investigation.
Further reflecting the intent of the legislature not to consider DSS a law enforcement agency whose investigative reports are closed pursuant to § 610.100.2, Section 210.150 specifically addresses the confidentiality of reports and records generated by the Children's Division in abuse or neglect cases. Generally, the confidentiality of such reports is strongly protected, and only an extremely limited list of individuals and agencies is allowed access thereto. § 210.150. However, an exception is set forth in § 210.150.5, providing that "[n]othing in this section shall preclude the release of findings or information about cases which resulted in a child fatality or near fatality. Such release is at the sole discretion of the director of the department of social services, based upon a review of the potential harm to other children within the immediate family." Thus, where the case involves a child fatality, as in the case at bar, the records and reports of the Children's Division are presumed to be closed, but the Director of DSS may elect to release some or all of those documents in his or her sole discretion.
In short, the legislature did not intend for DSS to be considered a law enforcement agency for purposes of the Sunshine Law, and the trial court erred in concluding otherwise. The release of the reports and records generated by the Children's Division is governed by § 210.150, and the Director has the discretion to release the records and reports of the Children's Division *503 where a child fatality or near-fatality has occurred.
The Prosecuting Attorney notes several compelling policy reasons why Children's Division reports should be kept closed. This Court, however, is not a policy-making body. "The legislative purpose of the Sunshine Law is for governmental conduct to be open to public inspection, but not at the expense of the vital personal interests of the citizenry." State ex rel. Goodman, 181 S.W.3d at 159. "It is the role of the legislature, and not the courts, to strike the delicate balance between these two competing interests." Id. "The legislature conveys this balance and their intent to us through the express words and implied meaning of the statute." Id.
In this instance, the legislature placed its trust in the Director of DSS to carefully consider and exercise discretion in determining which records, information, and findings should be kept closed and which should be released. If the legislature wished to preclude the Director from exercising that discretion until after any criminal investigation was complete, it would have so indicated. Therefore, it is left to the Director to weigh the benefits of disclosing the records and reports at issue against the damage such disclosure might have on those related to the victim and on the future prosecution of the person or persons responsible for the abuse.[3]
The Director's discretion does not, however, extend to those investigative records and reports contained in its files that were generated by law enforcement agencies and provided to the Children's Division.[4] Such investigative reports are closed records under the clear language of § 610.100.2 until the law enforcement investigation becomes inactive.
The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
All concur.
NOTES
[1] All statutory references are to RSMo Cum. Supp.2005 unless otherwise noted.
[2] Kerns was originally charged with voluntary manslaughter, but that charge was later amended to second-degree murder. Rich was charged with endangering the welfare of a child.
[3] DSS mistakenly asserts in its reply brief that the legislature has "evidenced a preference in favor of disclosure with respect to [Children's Division] records in certain instances." While the legislature has chosen to allow the Director of DSS the discretion to disclose those records in cases involving child fatality or near-fatality, the statute does not express a preference in favor of disclosure. In point of fact, the provisions of § 210.150 are even more protective of Children's Division records than § 610.100 is of investigative reports of law enforcement agencies. The records of the Children's Division are completely closed, even after all investigation and prosecution has ceased, in cases that do not involve a child fatality or near-fatality. In cases involving a child fatality or near-fatality, the Director has the discretion to keep those records closed indefinitely. While the legislature has granted the discretion to the Director to open the records in such cases, the statutory language does not evince a preference in favor of doing so.
[4] The Director conceded this point during oral argument.