John M. HUFF, Director, Department of Insurance, State of Missouri, Respondent,

v.

The INTEGRAL INSURANCE COMPANY, Respondent,

Arizona Property and Casualty Insurance Guaranty Fund, Appellant.

No. WD 73319.

Missouri Court of Appeals, Western District.

Nov. 1, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 20, 2011.

association that paid the claim of a person who was insured by an insurance company that was liquidated in Missouri. Respondent Huff is the director of the department of insurance, who oversaw the liquidation of the insurance company. The primary issue is whether the guaranty association is entitled to reimbursement for its general administrative expenses, which it claims to have incurred in association with paying the insured's claim. We hold that general administrative expenses are not recoverable under section 375.1218.2. Accordingly, we affirm.

### Facts and Procedural Background[1]

■ In 1999, the circuit court ordered the liquidation of Integral Insurance Company. Appellant Arizona Property and Casualty Insurance Guaranty Fund ("the Arizona Fund") is a foreign guaranty association that pays claims of persons in Arizona who were insured by insurance companies against which liquidation proceedings have been initiated. The Arizona Fund was activated to pay Arizonans' claims against Integral.

Respondent John Huff is the Director of the State of Missouri's Department of Insurance ("the Director"). The Director is responsible for liquidating Integral. On March 31, 2010, the Director filed an Application for Approval of Plan for Distribution of Assets of the Integral Insurance Company Trust ("the Plan"). The circuit court then entered an order preliminarily approving the Plan.

The Arizona Fund filed an objection to approval of the Plan. After receiving the objection, the Director (through a deputy) investigated the claim and determined that the Arizona Fund had made payment for a single property damage claim made by an Arizona resident ("the Insured") against

Ross S. Myers, Lee's Summit, MO, for Appellant.

Dana L. Frese, Jefferson City, MO, for Respondents.

Before Division Three: KAREN KING MITCHELL, Presiding Judge, and JAMES M. SMART, JR., and GARY D. WITT, Judges.

KAREN KING MITCHELL, Presiding Judge.

This is an insurance company liquidation case. The appellant is a foreign guaranty

---

1. On appeal from a court-tried matter, we view the facts in the light most favorable to the judgment. *K.M.D. v. Alosi,* 324 S.W.3d 477, 478 n. 1 (Mo.App. W.D.2010).

Integral. The claim was for $3,887.39, and the deputy sent the Arizona Fund a check for that amount.

The Director then responded to the Arizona Fund's objection. In its response, the Director noted that it had reimbursed the Arizona Fund for the $3,887.39 loss claim but that the Arizona Fund was seeking an additional $16,720.74 in general administrative expenses that it allegedly incurred in paying the single claim. The Director itemized the disputed expenses as follows:

| | | |
|---|---|---|
| a. | Accounting/Legal | $1,032.46 |
| b. | Administrative Fees | $8,688.22 |
| c. | Miscellaneous | $3,424.98 |
| d. | Office Expense | $2,347.96 |
| e. | Postage | $ 53.97 |
| f. | Rent | $ 910.40 |
| g. | Telephone | $ 262.75 |

The Director argued that these expenses should not be recoverable.

The circuit court then entered judgment, overruling the Arizona Fund's objection to the Plan. This appeal follows.

### Standard of Review

■ As in any court-tried case, our review of the circuit court's judgment is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Accordingly, we will affirm the circuit court's judgment unless it: (1) is unsupported by substantial evidence; (2) is against the weight of the evidence; (3) misstates the law; or (4) misapplies the law." *K.M.D. v. Alosi*, 324 S.W.3d 477, 479 (Mo.App. W.D.2010).

2. Unless otherwise stated, statutory citations are to RSMo 2000, as updated by the 2010 cumulative supplement.

3. For example, the Arizona Fund does not argue that it is entitled to any interest that was occasioned by the Director's initial error in omitting the claim from the Plan. The Arizona Fund does argue in Point I that it was entitled to its administrative expenses in addition to the primary claim, but that argument is identical to Point II, and we therefore ad-

### Legal Analysis

### I. The Arizona Fund's reimbursement for the amount it paid to the Insured

■ The Arizona Fund argues that the circuit court erred in overruling its objection in that the Plan originally did not provide it with reimbursement for the amount it paid to the Insured. We disagree.

In order to have a right of appeal, the appellant must be aggrieved by the circuit court's action. § 512.020.[2] Here, there is no dispute that, although the Plan did not originally provide the Arizona Fund reimbursement for the $3,887.39 it paid to the Insured, the Director subsequently sent the Arizona Fund a check for that amount. The Arizona Fund has not explained how it is aggrieved by the circuit court's overruling its objection to the Plan with respect to this $3,887.39.[3] Point denied.

### II. The Arizona Fund's reimbursement for general administrative expenses

The Arizona Fund argues that the circuit court erred in overruling its objection in that the Plan did not include its general expense claim even though general expenses are recoverable under section 375.1218.2, and it "properly and timely" filed its general administrative expense claim. We disagree.

dress it below. The circuit court's action in preliminarily approving the Plan may have been in error, because, as the Director acknowledges, the loss claim of $3,887.39 was owed. However, by the time the circuit court entered its judgment, the Director had voluntarily paid the $3,887.39. Although the Arizona Fund alleges that it has not cashed the check, it does not argue that the circuit court's judgment will deprive the Fund of the $3,887.39 payment.

### a. Inadequacy of the record

First, we note that there is no evidence in the record before us that the Arizona Fund "properly and timely" filed a general administrative expense claim. Section 375.1208.2 provides that the liquidator of an insurance company need not consider any claim that was not filed in compliance with that section. It then provides that the liquidator and a foreign guaranty association can agree on the form and substantiation that will be required of the latter's proof of claims. § 375.1208.5. Here, there is no evidence in the record of any agreement between the Director and the Arizona Fund as to what form and substantiation was required to prove the latter's claims.

In its suggestions in support of its objection to the Plan, the Arizona Fund claimed (and the Director did not dispute) that, on July 2, 1999, it filed a proof of claim and that thereafter, it "regularly reported" the amount of its claim. However, the proof of claim itself does not appear in the record, and the Arizona Fund does not even purport to have filed a proof of claim to substantiate the administrative expenses that it claims to have incurred since 1999. The most that can be supposed is that the Arizona Fund filed an initial proof of claim with respect to the $3,887.39 it paid to the Insured and that it thereafter sent the Director "regular reports" regarding its claimed administrative expenses. Even assuming that such reports could satisfy section 375.1208 (a dubious assumption considering that section 375.1208 requires detailed proof of claims or an agreement between the liquidator and a guaranty association as to the form and substantiation of claims), the reports do not appear in the record.

Given that it is the appellant's burden to compile a record that contains all material information necessary to dispose of the appeal, Rule 81.12(a), and given further that this record gives us no basis to verify that the Arizona Fund "properly and timely" filed its claim to general administrative expenses, Point II could be denied for lack of necessary information in the record. Nevertheless, since the Director does not argue this point, we address the merits of the contention.

### b. The merits of the Arizona Fund's point on appeal

■ The parties agree that, if there *is* authority for the Arizona Fund to recover its general administrative expenses, it stems from section 375.1218. That section provides:

> The order of distribution of claims shall be:
>
> . . . .
>
> 2. Class 2. All claims under policies including such claims of the federal or any state or local government for losses incurred ("loss claims") including third party claims and *all claims of a guaranty association or foreign guaranty association including reasonable allocated loss adjustment expenses* . . . . The liquidator shall have authority to inquire into the reasonableness of any allocated loss adjustment expenses claimed by a guaranty association or foreign guaranty association and such claim shall not be allowed if it is found to be unreasonable.

(Emphasis added.) The statute defines "allocated loss adjustment expenses" as follows:

> those fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of an individual claim or loss or to the protection and perfection of the subrogation rights of any insolvent insurer arising out of a policy of insurance issued by the insolvent insurer. "Allocated loss adjustment expenses" shall include all court

costs, fees and expenses; fees for service of process; fees to attorneys; costs of undercover operative and detective services; fees of independent adjusters or attorneys for investigation or adjustment of claims beyond initial investigation; costs of employing experts for preparation of maps, photographs, diagrams, chemical or physical analysis or for advice, opinion or testimony concerning claims under investigation or in litigation; costs for legal transcripts or testimony taken at coroner's inquests, criminal or civil proceedings; costs for copies of any public records; costs of depositions and court-reported or –recorded statements. "Allocated loss adjustment expenses" *shall not include the salaries of officials, administrators or other employees or normal overhead charges such as rent, postage, telephone, lighting, cleaning, heating or similar expenses.*

§ 375.1152(1) (emphasis added).

The Arizona Fund concedes that the disputed expenses do not qualify as "allocated loss adjustment expenses." Its argument, rather, is that the term "all claims" inherently embraces its claim to general administrative expenses.

■ In interpreting a statute, we give the subject language its plain and ordinary meaning. *Spradlin v. City of Fulton,* 982 S.W.2d 255, 258 (Mo. banc 1998). We read statutory language *in pari materia,* that is, in the context of surrounding statutory language. *Goerlitz v. City of Maryville,* 333 S.W.3d 450, 458 (Mo. banc 2011). If possible, we will avoid a construction that renders statutory language redundant. *In re Estate of Hough,* 457 S.W.2d 687, 692 (Mo.1970).

Here, when section 375.1218.2 is read in conjunction with the definition of "allocated loss adjustment expenses," it becomes clear that general administrative expenses are not included within "all claims . . . of a foreign guaranty association." The statutes say that "all claims . . . of a foreign guaranty association" *include* reasonable "allocated loss adjustment expenses," § 375.1218.2, and that "allocated loss adjustment expenses" *exclude* general "salaries of officials, administrators or other employees or normal overhead charges such as rent, postage, telephone, lighting, cleaning, heating or similar expenses," § 375.1152(1), which are precisely the types of expenses on which the Arizona Fund bases its objection ("general administrative expenses"). There would be no point in *excluding* general administrative expenses from the definition of allocated loss adjustment expenses if the former were *included* within the term "all claims," which itself embraces allocated loss adjustment expenses. That is, applying the Arizona Fund's broad understanding of the term "all claims" here, the statutes would effectively be construed in the following absurd fashion: "all claims (which term *includes* general administrative expenses), including allocated loss adjustment expenses (which term *excludes* general administrative expenses)."

It is unreasonable to suggest that the legislature intended to include general administrative expenses in one breath and, in the next, specifically state that they are excluded. In addition, there would be no need to expressly mention allocated loss adjustments expressly if "all claims" was read broadly, without limitation, as the Arizona Fund suggests. Thus, the term "all claims" cannot reasonably be said to include *both* general administrative expenses *and* allocated loss adjustment expenses, because the statute specifically defines the latter to exclude the former. § 375.1152(1). Since we know that the term "all claims" *does* include allocated loss adjustment expenses, § 375.1218.2, we

will construe the statute to mean that it *does not* include general administrative expenses.

This conclusion is also supported by reading the language regarding claims of a guaranty association in the context of the surrounding statutory language. Doing so leads to the conclusion that "all claims" should be read consistently throughout section 375.1218.2 to refer to claims under policies, and the reference to allocated loss adjustment expenses is intended to broaden the types of expenses included within "all claims" in the context of a guaranty association.

The Arizona Fund argues that, since the statute that was operative for claims filed before August of 1991 (when section 375.1218 was added to Chapter 375) provided that "[a] state guaranty association shall only be entitled to an allowance for reimbursement of its allocated loss adjustment expenses *and shall not be allowed reimbursement for its general administrative expenses,*" § 375.700.2, RSMo 2000 (emphasis added), we can conclude that the legislature intended for general administrative expenses to be recoverable from 1991 going forward, given that section 375.1218 does not contain the italicized language. But, prior to the enactment of section 375.1218 and section 375.1152(1), "allocated loss adjustment expenses" was not a defined term. By providing in section 375.1218 that "allocated loss adjustment expenses" are recoverable and then, in section 375.1152, defining that term to exclude general administrative expenses, the legislature achieved the same effect that former section 375.700.2 achieved: allocated loss adjustment expenses are recoverable by a foreign guaranty associa-

tion but general administrative expenses are not.

■ In the alternative, as a purely factual matter, there is substantial evidence to support the circuit court's overruling the Arizona Fund's objection.[4] The Arizona Fund had the burden to establish the validity of its claims. § 375.1208. Given that the Arizona Fund was claiming close to $17,000 in administrative expenses for the payment of a single claim, which the Director represented would have taken approximately one hour to have administered, there was substantial evidence for the court to conclude that the Arizona Fund's claims lacked credibility and that therefore the Arizona Fund had failed to meet its burden of proof.

Point denied.

### Conclusion

The circuit court did not err in overruling the Arizona Fund's objection in that the Director reimbursed the Arizona Fund for the amount it paid to the Insured, and the Arizona Fund was not entitled to reimbursement for its general administrative expenses. Accordingly, we affirm.

JAMES M. SMART, JR., Judge, and GARY D. WITT, Judge, concur.

---

4. The circuit court's order does not set out the basis upon which the circuit court overruled the Arizona Fund's objection.