**BRANDSVILLE FIRE PROTECTION DISTRICT, Plaintiff–Respondent,**

v.

**Jerry PHILLIPS and Nina Phillips, Defendants–Appellants.**

**No. SD 31576.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 25, 2012.

Jeffrey J. Brinker, St. Louis, MO, for Appellant.

A. Melissia Riddle, Chesterfield, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

The Brandsville Fire Protection District ("Fire District") received a judgment against Jerry Phillips and Nina Phillips ("Appellants") for $662.50 for services rendered in responding to Appellants' single-car accident within Fire District's boundaries on Highway 63 near West Plains.

In two points relied on, Appellants—non-residents of Fire District—contend that: 1) section 321.220,[1] which provides a mechanism for fire protection districts to charge individuals who reside outside the district for services received within it, does not apply because Fire District was not providing "fire protection services" to Appellants; and 2) the fees charged by Fire District constituted "emergency services response fees prohibited by [section] 374.055(3)."

Because Appellants' proposed construction of the statutes at issue would require us to ignore certain express terms and read in others that do not appear, we reject their suggested construction and affirm the judgment of the trial court in this apparent matter of first impression.

### Applicable Principles of Review

Each of Appellants' points claim "that the trial court erroneously applied the law." "When we consider an appeal arising from the interpretation and application

---

1. Unless otherwise stated, all statutory references are to RSMo Cum.Supp.2011.

of a statute, our review is *de novo.*" *Coleman v. Meritt,* 324 S.W.3d 456, 459 (Mo. App. S.D.2010).

## Facts and Procedural Background

Citing section 321.220(12), Fire District's petition sought $100 for an "initial call out" fee plus $562.50 for 2.25 hours at $250 per hour for time spent at the scene of Appellants' November 8, 2009, single-car accident. Appellants' amended answer alleged that: 1) section 321.220(12) did not apply to this accident; and 2) section 374.055(5) prohibited the charges.

The case was tried to the court without a jury in June 2011. Counsel for Appellants did not dispute that Appellants were in a motor vehicle accident, that Fire District responded to the accident for 2.25 hours, or claim that the quality of Fire District's services was deficient. Viewed in the light most favorable to the judgment, *see Huff v. Integral Ins. Co.,* 354 S.W.3d 228, 229 n. 1 (Mo.App. W.D.2011), the relevant facts are as follows.

James Hedlesten, the president of Fire District's board, was called to the scene and observed Appellants' car "off the north side of the road." The accident occurred within Fire District's boundaries. The "Howell County E–911 Department Log" ("the 9–1–1 log") revealed that a deputy sheriff had reported the accident and had requested ambulances for both occupants of the car.

By the time Hedlesten arrived, a highway patrol trooper and "about three other [Fire District] people" were present, but Appellants had already been transported from the scene. Hedlesten agreed that "[t]here was no fire that needed to be put out or anything of a fire protection nature[.]" When Fire District is dispatched to a crash scene by a 9–1–1 dispatcher, it has "no way of knowing whether or not there is a fire or not, or if there's any kind

of a hazardous spill or something that might cause a fire."

Captain Lowe of Fire District, who was close to the scene when he received the 9–1–1 dispatch call, arrived "quite some time before" Hedlesten. Lowe provided first aid to Appellants before the ambulances arrived, then helped load Appellants into their respective ambulances. Lowe requested an additional Fire District unit to help with traffic control at the scene. Hedlesten talked with Lowe about how to prevent another accident while the wrecker was removing Appellants' vehicle because it was located on "kind of a long, sweeping curve and it was rather blind[,]" and they needed "to warn other motorists that there was a problem in the area." It was typical for Fire District to work to prevent other collisions from happening at the scene of an accident, and its personnel did so here by providing traffic control while the wrecker removed Appellants' car.

Fire District's board had passed an ordinance that enabled it to charge for services under section 321.220. Fire District personnel respond to emergency alarms as well as to fire calls. Other than Hedlesten, the individuals who worked for Fire District were not licensed law-enforcement officers and were not required to have law-enforcement training. Hedlesten was a retired highway patrol officer, and he had maintained a reserve commission with Willow Springs that was separate and apart from his role as a member of Fire District. Hedlesten responded as follows to cross-examination questions about the assistance he had provided to law enforcement officers:

Q. Okay. And if you helped the law enforcement officer take measurements at the scene or helped them take down names of witnesses, you're furthering the law enforce-

ment activity that the officer's doing. Does that seem fair?

A. I would be doing that, but anyone can do that.

Q. Understood. You don't disagree with what I said though, right?

A. No.

Fire District "would do anything that [it] could to assist [the highway patrol officer], as well as the people who are trying to remove the injured, et cetera." Hedlesten did not know if law enforcement officers had specifically requested Fire District to remain at the scene of Appellants' accident. Its personnel would stay if Fire District felt they were needed.

Howell Rural Fire District [2]—an organization very similar to Fire District—also responded to the scene of Appellants' accident. The 9–1–1 log listed Howell Rural Fire District as the "fire department" and listed Fire District as the "first responder." The Missouri State Highway Patrol was listed on the 9–1–1 log as the "police" agency on the scene. Howell Rural Fire District had left by the time Hedlesten arrived. "Howell County 911" dispatchers would sometimes call both Fire District and Howell Rural Fire District out to an accident scene if they were unsure of the precise location of a reported accident. Fire District and Howell Rural Fire District had entered into a "Mutual Aid Assistance Agreement & Automatic Aid Agreement" ("Mutual Aid Agreement") that "state[d] that they can call on each other for assistance, without them charging for their assistance." [3]

The trial court took the matter under advisement, and the parties filed trial briefs. On July 27, 2011, the trial court entered its judgment in favor of Fire District. This appeal timely followed.

## Analysis

### Point I: The power to charge fees under section 321.220

◼ Appellants' first point contends the trial court's judgment was erroneous "because [section] 321.220 does not apply to the services rendered to [Appellants] by [Fire District] in that [Fire District] was not providing fire protection to the property in the district." [4] Even if we assume

---

2. Hedlesten referred to an entity on the 9–1–1 log as "Howell Rural Rescue," and he also referred to the "Howell Rural Fire Department" in his testimony. The 9–1–1 log refers to "Hwl [sic] Rural Rescue," and the trial court referred to the "Howell Rural Fire District[.]" We presume these are all references to the same entity that we will refer to as "Howell Rural Fire District."

3. In the body of their brief, Appellants complain that they received bills for services from both Fire District and Howell Rural Fire District. Hedlesten testified that he did not think it was proper for Howell Rural Fire District to have billed Appellants under the terms of the Mutual Aid Agreement because he did not think two districts should send out bills for the same accident. We do not address the complaint as it was not included in either of Appellants' points relied on. *Roberts v. Progressive Nw. Ins. Co.*, 151 S.W.3d 891, 894 (Mo.App. S.D.2004).

4. Appellants' first point fails to "explain in summary fashion why, *in the context of the case*, [the] legal reasons support the claim of reversible error." Rule 84.04(d)(1)(C) (emphasis added). "Adherence to the rule serves to notify the opposing party of the precise matters under contention and inform the court of the issues presented for review." *Carden v. Missouri Intergovernmental Risk Mgmt. Ass'n*, 258 S.W.3d 547, 556 (Mo.App. S.D.2008). Because our interpretation of the statutes at issue will necessarily have an effect upon the public in general, we exercise our discretion to review the deficient point on its merits. *See State ex rel. Missouri Office of the Pub. Counsel v. Public Serv. Comm'n of the State of Missouri*, 293 S.W.3d 63, 70 (Mo.App. S.D.2009) (where a point lacking "contextual references to the facts" was grounds for dismissal, but it would be reviewed due to the public, business, and private interests involved). And we will also review Appellants'

that Fire District "was not providing fire protection to the property in the district[,]" the point fails.

Section 321.220, entitled "Powers of board-employee benefits plan[,]" opens with the following language:

For the purpose of providing fire protection to the property within the district, the district and, on its behalf, the board shall have the following powers, authority and privileges:

Subsection 12 provides authority to

adopt an ordinance, rule, or regulation allowing the district to charge individuals who reside outside of the district, but who receive emergency services within the boundaries of the district, for the actual and reasonable cost of such services. However, such actual and reasonable costs shall not exceed one hundred dollars for responding to each fire call or alarm and two hundred fifty dollars for each hour or a proportional sum for each quarter hour spent in combating a fire or emergency[.]

Section 321.220(12). (Bold text as in original.) The opening sentence of section 321.220 reads today as it did when first enacted in 1947. The language at issue in subsection 12 was added to section 321.220 in 2005.

Appellants acknowledge that the definition of "Fire Protection District" set forth in section 321.010 states that a fire district's purpose includes protection against "fire and hazards which do or may cause fire" and "goes on to describe other activities in which a Fire Protection District may engage[.]" In pertinent part, the definition states:

A "**fire protection district**" is a political subdivision which is organized and empowered to supply protection by any available means to *persons* and property against *injuries* and *damage* from fire and from *hazards which do or may cause fire, and which is also empowered to render first aid for the purpose of saving lives, and to give assistance in the event of an accident or emergency of any kind.*

Section 321.010.1, RSMo 2000 (emphasis added; bold text as in original).

While they acknowledge this broad definition, Appellants assert that even though a fire protection district may *do* much more than fight fires, it may only *charge* for services that are strictly related to fire protection because

Chapter 321 of the Missouri Revised Statutes governs Fire Protection Districts.... The opening sentence of the statute which modifies all 18 paragraphs that follow states, "For the purpose of providing fire protection to the property within the district, the district and, on its behalf, the board shall have the following powers, authority and privileges:...." [ ] Given the wording of the opening sentence of the statute ... there is no need to construe paragraph 12 under which [Fire District] seeks to recover as it is clear from the opening sentence of the statute that it does not apply to the accident involving [Appellants] because [Fire District] was not providing fire protection to the property with[in] the district.

We disagree.

 Even if we assume, *arguendo*, that the opening sentence of section 321.220 limits all of its subsections to "the purpose of providing fire protection to the property within the district," such a construction would not aid Appellants. As they acknowledge in their brief, we must

---

second point, which suffers from the same defect, for the same reason. *Id.* at 70 n. 4. All

rule references are to Missouri Court Rules (2012).

construe statutes to effectuate the intention of the legislature and to comport with reason. *Wellston Fire Protection Dist. of St. Louis Cnty. v. State Bank & Trust Co. of Wellston*, 282 S.W.2d 171, 174 (Mo.App. St.L.D.1955). Indeed, "[w]e must construe provisions of the entire legislative act together and, to the extent reasonably possible, harmonize all provisions." *Bolen v. Orchard Farm R–V Sch. Dist.*, 291 S.W.3d 747, 751 (Mo.App. E.D.2009).

Here, the legislature could have reasonably determined that the additional funds produced by allowing fire districts to recoup the costs they incurred in rendering emergency services to non-residents of the district would advance the statute's stated purpose of "providing fire protection to the property within the district" by ensuring that Fire District was not depleted of the funding necessary to accomplish that task. Section 321.220. Conversely, Appellants' contention that the legislature intended to provide fire districts with broad responsibilities while narrowly restricting their ability to fund such services does not comport with reason.[5]

■ Other commonly applied canons of statutory construction also contravene Appellants' proposed interpretation. When interpreting statutory language, "specific designations will control over general terms[.]" *Terminal R.R. Ass'n of St. Louis v. City of Brentwood*, 360 Mo. 777, 230 S.W.2d 768, 769 (1950). "Where one provision of a statute contains general language and another provision in the same statute contains more specific language, the general language should give way to the specific." *Younger v. Missouri Pub. Entity Risk Mgmt. Fund*, 957 S.W.2d 332, 336 (Mo.App. W.D.1997).

■ Further, "[a]n amended statute . . . should be construed on the theory that the legislature intended to accomplish a substantive change in the law." *Sermchief v. Gonzales*, 660 S.W.2d 683, 689 (Mo. banc 1983). For example, in *Lett v. City of St. Louis*, 948 S.W.2d 614, 618–19 (Mo.App. E.D.1996), the general language in the preamble of a local income tax ordinance suggesting that it would exempt income also exempt from state income tax was then modified by specific language in a section of the ordinance enacted later. Applying the foregoing principles here, we cannot find that the general introductory

5. Appellants make much of the fact that Hedlesten said that a fire was not imminent when he was at the scene of Appellants' accident. Hedlesten testified that he considered "fire protection" to require "a fire or the need for fire suppression" and that nothing of this nature existed at the scene of Appellants' accident. We do not find this fact significant. Hedlesten also testified that Fire District has "no way of knowing whether or not there is a fire or not, or if there's any kind of a hazardous spill or something that might cause a fire." The legislature could have reasonably determined that all automobile accidents which result in a call to a fire district for help present a potential fire hazard. But, even if it did not, Appellants do not present a cogent argument as to why the legislature might have intended to either reject the common-sense conclusion that when a fire district dispatches its personnel it has, in the words of Hedlesten, "no way of knowing whether or not there is a fire or not, or if there's any kind of a hazardous spill or something that might cause a fire" and/or require that fire districts (by means of the taxes paid by the residents of their districts) either choose to bear the expense of all calls and alarms involving nonresidents that did not ultimately result in the provision of "fire protection services" or abandon accident scenes after arriving once it is evident that nothing is burning or on the verge of igniting. As Fire District asserts in its brief, section 321.230 empowers a fire district to levy and collect taxes from those persons who reside in the district to fund all of its permitted activities as defined in section 321.010. The more reasonable conclusion is that the legislature intended to grant fire districts in section 321.220(12) the power to charge non-residents fees for the same services it provides residents of the district.

phrase "[f]or the purpose of providing fire protection to the property within the district" should be read as limiting the following more specific and later enacted language in subsection 12 that permits fire districts to charge individuals who reside outside the district for the receipt of "emergency services."

Finally, Appellants argue that the clauses in subsection 12 are themselves limited in scope "to incidents involving fire or fire hazards involving property only." Appellants argue that charges for "emergency services" is further modified by the term "fire" as to both "call" and "alarm." In other words, $100 may be charged for each fire call or fire alarm, but costs incurred in responding to other types of alarms are not recoverable. Appellants cite "common sense" for its assertion that "fire" modifies both call and alarm. But this construction is not a grammatical necessity, and Appellants do not explain why a "fire call" and a "fire alarm" do not simply refer to two different means of summoning a fire district—one by call and another by alarm. In any event, even if the conjunctive "or" is read as referencing two types of requests for assistance with fires only, Appellants still face the problem that the statute permits charges for "combating a fire *or emergency*" (emphasis added). Section 321.220(12).

Appellants maintain that "emergency services" and "emergency" "are a clear reference to situations which pose an immediate risk or hazard of fire" and that some things, such as leaking gas lines, qualify, but other things, such as "a single car automobile accident[,]" do not. Appellants assert that the statute is not concerned with "the future possibility of an emergency but rather the immediate need for fire protection services." But, as earlier noted, fire districts often cannot know what they are going to face when they are called out. Appellants point to no authority suggesting that the legislature wanted resident taxpayers to support all fire district services but wanted non-residents using the same services to pay for only some of them.

Appellants point out that while an "emergency" for the provision of ambulance services is defined in sections 321.225(5), RSMo 2000, and 321.226(2), RSMo 2000, as "a situation resulting from a sudden or unforeseen situation or occurrence that requires immediate action to save life or prevent suffering or disability[,]" the term "emergency" is not defined in section 321.220. They then argue that "all the terminology in [section] 321.220(12) applies to fire protection services and fire protection services to property only[,]" presumably suggesting—without citing any authority for the proposition—that the term "emergency" must therefore include only a "fire emergency."

■ "When a statutory term is not defined, courts apply the ordinary meaning of the term as found in the dictionary." *Harness v. Southern Copyroll, Inc.*, 291 S.W.3d 299, 304 (Mo.App. S.D.2009). "Emergency" is defined in MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 407 (11th ed.2005) as "1: an unforeseen combination of circumstances or the resulting state that calls for immediate action 2: an urgent need for assistance or relief <the governor declared a state of [emergency] after the flood>[.]" The ordinary definition of emergency is not limited to situations involving fire.[6]

6. Appellants also suggest that because "fees for rendering first aid or for the appearance of first responders" are not mentioned in the statute, such services are not included in those that may be recovered under section 321.220. They further suggest that "traffic control does not constitute providing fire protection to property within the district" as it is

For all of the aforementioned reasons, we believe the intent of the legislature, as expressed in its definition of a fire protection district in section 321.010 and its addition of the enumerated powers set forth in section 321.220(12), was to allow Fire District to charge Appellants for the emergency services they received. Point I is denied.

### Point II: Accident Response Service Fees

■ Appellants' second point claims that "[section] 374.055(3) prohibits [Fire District] from charging for the services provided to Appellants in that those charges were emergency services response fees[.]" Again, we disagree.

■ Section 374.055.3 states,

Notwithstanding any other provision of law to the contrary, no person or entity shall impose an accident response service fee on or from an insurance company, the driver or owner of a motor vehicle, or any other person. As used in this section, the term **"accident response service fee"** means a fee imposed for the response or investigation by a local law enforcement agency of a motor vehicle accident.

(Bold text as in original.) Contrary to Appellants' contention, the statute does not prohibit "emergency services response fees"; it prohibits the imposition of an "accident response service fee" which is defined as a "response or investigation by a local law enforcement agency of a motor vehicle accident." *Id.* Appellants reason that because directing traffic while a vehicle is removed from the scene of an accident is "within the primary purpose of the [h]ighway [p]atrol [as defined in section 43.025,[7]] any public agency that assists in directing traffic "act[s] as an extension of the law enforcement agency at the scene." [8]

Chapter 374 addresses the "Department of Insurance, Financial Institutions and Professional Registration[.]" The term "local law enforcement agency" is not defined in chapter 374, and Appellants have not provided us with a suggested definition. We have previously looked to an officer's power to make arrests as a significant feature in serving a "law enforcement agency[.]" *Scroggins v. Missouri Dept. of Soc. Serv., Children's Div.*, 227 S.W.3d 498, 501–02 (Mo.App. W.D.2007) (Department of Social Services found not to be a law enforcement agency for purposes of Sunshine Law); *cf. News–Press & Gazette Co.*

---

more in the nature of a service to "the public at large" and is not within the "more specialized skill set" contemplated by section 321.220. The statute, however, does not purport to categorize services either by label (such as "first responders") or by the degree of skill involved (such as "time spent directing traffic" versus "time spent connecting a fire hose") and Appellants direct us to no authority requiring the legislature to enact such a schedule instead of choosing to allow all services provided by a fire district to be charged at a capped hourly rate.

7. Appellants do not address how the highway patrol qualifies as a *local* law enforcement agency for purposes of section 374.055(3).

8. Appellants also argue that the "obvious" purpose of section 374.055 is to prevent "double taxation because these services are already paid for by property, sales, and other taxes that are collected by state and local governments within which the districts are located" and Appellants were apparently charged by Howell Rural Fire District for responding to the scene. In their reply brief, Appellants argue that Fire District "passed an ordinance which it is seeking to enforce against [Appellants,]" seemingly suggesting that in relying on the charging statute, Fire District was enforcing the law and thereby became a law enforcement agency. Because neither argument is contained within a point relied on, the arguments are not preserved for our review. *Roberts*, 151 S.W.3d at 894.

*v. Cathcart,* 974 S.W.2d 576, 579–80 (Mo. App. W.D.1998) (medical examiner's office deemed a law enforcement agency for purposes of Sunshine Law as it, among other things, takes charge of dead bodies, fully investigates essential facts concerning medical causes of death, performs autopsies, receives cooperation from law enforcement officers, and delivers records to the prosecuting attorney). Appellants point to no authority authorizing fire district personnel to make arrests in their capacity as public servants, seize evidence, or fully investigate seized evidence.[9]

■ More importantly, the statute does not simply refer to the actions of "response" and "investigation"; it goes on to add the further qualifier that these particular actions must have been engaged in by a certain entity—a "local law enforcement agency." Appellants' suggested interpretation of the statute would treat this additional restriction as mere surplusage. This contradicts another canon of statutory construction: "[w]e presume that the legislature intended that each word, clause, sentence, and provision of a statute have effect and should be given meaning." *Bolen,* 291 S.W.3d at 751.

The specific statutory definition of a fire protection district does not suggest that it is a local law enforcement agency or acts as an extension of a local law enforcement agency. Section 321.010.1. And the power to enact and enforce ordinances conferred in section 321.220(12) does not treat fire districts as law enforcement agencies. Instead, fire districts may:

[A]dopt and amend bylaws, fire protection and fire prevention ordinances, and any other rules and regulations not in conflict with the constitution and laws of this state, necessary for the carrying on of the business, objects and affairs of the board and of the district, *and refer to the proper authorities for prosecution any infraction thereof detrimental to the district.* Any person violating any such ordinance is hereby declared to be guilty of a misdemeanor, and upon conviction thereof shall be punished as is provided by law therefor. The prosecuting attorney for the county in which the violation occurs shall prosecute such violations in the circuit court of that county. The legal officer or attorney for the fire district may be appointed by the prosecuting attorney as special assistant prosecuting attorney for the prosecution of any such violation.

Section 321.220(12) (emphasis added). The only ordinance admitted into evidence in this case, Fire District's Exhibit C, empowers Fire District to charge for services provided to non-residents; it says nothing about the violation or prosecution of other ordinances.

Appellants have cited no authority for the proposition that complying with requests for assistance and otherwise helping a law enforcement officer at the scene of an accident (as "anyone" might do) transforms the person so acting into a highway patrolman or member of a local law enforcement agency. Section 374.055(3) simply has no application to the instant matter. Point II is also denied,

9. By comparison, section 320.230, RSMo 2000, specifically permits the state fire marshal and his investigators who have attained proper certification to act as peace officers, make arrests, and aid police and sheriffs' departments in investigations. Under section 320.220, RSMo 2000, chiefs of fire departments and other "political subdivision[s]" may be designated by the state fire marshal as a special deputy for their city or political subdivision and such officers may investigate the origin of a fire, then promptly notifying the state fire marshal of suspicious fires. Appellants make no claim that Fire District qualifies as a local law enforcement agency under these statutes.

and the judgment of the trial court is affirmed.

NANCY STEFFEN RAHMEYER, J., and GARY W. LYNCH, J., concur.